IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF IOWA, | ) | |
| | ) | NO. 23-CR-1013 |
|     Plaintiff, | ) | |
| | ) | BRIEF IN SUPPORT |
| v. | ) | OF MOTION TO DISMISS |
| | ) | COUNTS 9 AND 14 |
| PRINCIPAL LAVELLE SPRINGER, | ) | |
| | ) | |
|     Defendant. | ) | |

## I.    PROCEDURAL BACKGROUND

On May 3, 2023, Principal Springer was charged in a multi-count, multi-defendant Indictment. He was charged with one count of conspiracy to distribute controlled substances (Count 1), two counts of possession of a firearm by drug user and by a person convicted of domestic violence (Counts 9 and 14) and one count of possession with the intent to distribute a controlled substance (Count 15). He has plead not guilty and this matter is scheduled to go to trial on October 16, 2023.

## II.    FACTS RELEVANT TO THIS MOTION

On September 4, 2018, Mr. Springer was convicted of assault with intent to inflict serious injury (an aggravated misdemeanor) in Dubuque County, Case Number FECR128882. Mr. Springer was originally charged with domestic abuse assault impeding air/blood flow causing bodily injury. It is also alleged that Mr. Springer is an unlawful user of controlled substances as defined in 21 U.S.C. § 802, namely marijuana.[1]

It is further alleged that on both February 22, 2021, and April 16, 2021, Mr. Springer possessed at least one firearm.

---

[1] It should be noted that Mr. Springer is NOT admitting to this fact for the purposes of this motion.

### III.     18 U.S.C. §§ 922(G)(3) AND (9) ARE FACIALLY UNCONSTITUTIONAL

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), significantly limited the test for whether a prohibition against possessing firearms is consistent with the Second Amendment's dictate that the right to keep and bear arms "shall not be infringed." Before *Bruen*, most Courts of Appeals applied a two-step "means-end" framework when analyzing statutes prohibiting firearm possession. *United States v. Sitladeen*, 64 F.4th 979, 984 (8th Cir. 2023). Pre-*Bruen*, the Eighth Circuit relied upon these decisions from its sister circuits when rejecting Second Amendment challenges to 18 U.S.C. § 922(g) provisions. *See United States v. Seay*, 620 F.3d 919, 924-25 (8th Cir. 2010) (rejecting Second Amendment challenge to § 922(g)(3)); *see also United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011) (relying on *Seay* to summarily reject Second Amendment challenge to § 922(g)(1)).

But *Bruen* rejected this means-end test, and therefore overruled this case law. *United States v. Rahimi*, 61 F.4th 443, 450-51 (5th Cir. 2023) ("Bruen clearly 'fundamentally change[d]' our analysis of laws that implicate the Second Amendment . . . rendering our prior precedent obsolete." (Internal quotation marks omitted)). Instead, the Supreme Court held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct…." *Bruen*, 142 S. Ct. at 2126. If the statute or regulation infringes on this constitutionally protected conduct, the burden is then on the prosecution to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. This does not require the government to identify a "historical *twin*; rather, a well-established and representative historical *analogue* suffices." *Rahimi*, 61 F.4th at 454 (internal quotations omitted).

Case 2:23-cr-01013-CJW-MAR    Document 39-1    Filed 07/18/23    Page 2 of 7

### A. The Second Amendment protects the conduct – possession of a firearm – Regulated in 18 U.S.C. §§ 922(g)(3) and (9)

The Second Amendment protects firearm possession. In *Bruen*, the Supreme Court undoubtedly reaffirmed its holding that the Second Amendment provides for a personal right to possess firearms. *Bruen*, 142 S. Ct. 2111 (2022); *cf. McDonald v. Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Bruen* explained that this right did not just extend to possession of firearms at one's home, but also extended to the possession of firearms in public for self-defense. *Bruen*, 142 S. Ct. at 2134.

Mr. Springer also falls within the definition of "the people" as used in the Second Amendment. In *Heller*, the Court interpreted "the people" to presumptively apply to "all Americans." 554 U.S. at 581. The Court stated that this phrase "unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 580-81 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). Consistent with *Heller*, other courts have held that even felons fall within the definition of "the people" under the Second Amendment, *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022); *United States v. Carrero*, No. 2:22-cr-30, 2022 WL 9348792, at *2 (D. Utah Oct. 14, 2022), and this Court itself has held that those charged with 922(g)(9) also are "the people" referred to in the Second Amendment. *United States v. Bernard*, 2022 WL 17416681 at 7 (N.D. Iowa 2022). The conduct in this matter is protected by the Second Amendment.

### B. Section 922(g)(3) is not consistent with the Nation's tradition of firearm regulation

At the outset, it should be noted that a judge in the Northern District of Iowa has already addressed whether § 922(g)(3) is consistent with the nation's tradition of firearm regulation. In *United States v. Parker*, 2023 WL 3596453 Chief United States Magistrate Judge Mahoney

3

found that § 922(g)(3) is consistent with the nation's tradition of firearm regulation. In that ruling, Chief Magistrate Judge Mahoney noted that "the majority of district courts to address the issue … have held that § 922(g)(3) is not facially unconstitutional, relying on the on the same history supporting bans on felons from possessing firearms, as well as early laws prohibiting intoxicated persons from carrying firearms." *Id*. at 3.

Mr. Springer respectfully disagrees with Judge Mahoney. Mr. Springer insists that the courts in *United States v. Connelly*, 2023 WL 2806324 (W.D. Texas) and *United States v. Parker*, 2023 WL 1771138 (W.D. Oklahoma) ruled correctly when they found that 922(g)(3) were not consistent with the nation's tradition of firearm regulation. To make this determination, these courts reviewed historical laws regulating gun possession. The courts separated the historical laws into distinct categories.

    a. **Laws on Intoxication**

The *Connelly* court started off reviewing laws on intoxication. In that case, the government cited a Colonial Virginia law, a Colonial New York law and some laws from the Reconstruction era. These laws prohibited people who were actively intoxicated from using firearms or from using firearms around the New Year Holiday (the New York Law). The court in *Connelly* ruled that these laws were not similar enough to 922(g)(3) as these laws "prevented individuals from using or carrying firearms while intoxicated, rather than preventing users of intoxicants from possessing firearms at all." *Connelly* at 8.

The *Harrison* court agreed with the *Connelly* court but was more blunt about it when it stated "Where the seven laws the United States identifies took a scalpel to the right of armed self-defense – narrowly carving out exceptions[2] but leaving most of the right in place –

---

[2] I.e., prohibiting someone from firing a gun while intoxicated.

§ 922(g)(3) takes a sledgehammer to the right." *Harrison* at 8.

### b. Unvirtuous Individuals

The *Connelly* court then determined that merely being a drug user would not have been considered unvirtuous. In making that determination it cited what William Blackstone stated in his *Commentaries on the Laws of England* 42 (1769) that is "the vice of drunkenness, if committed privately and alone, is beyond the knowledge and of course beyond the reach of human tribunals: but if committed publicly, in the face of the world, [its] evil example makes it liable to temporal censures." *Connelly*, at 9 (internal quotations omitted). The court then correctly observed that drug use more closely resembles the private drunkenness which cast "doubt on the idea that history supports criminalizing or disarming [someone] for this behavior." *Id*.

The *Harrison* court pointed out that unvirtuous persons were persons who were a danger to the community and because a marijuana user was not inherently dangerous, then unvirtuous laws were not appropriate analogs for the purposes of 922(g)(3). *Harrison* at 19.

### c. Individuals Who Are Not Law-Abiding

The Connelly court started its analysis in this section by observing that "no one reads [Second Amendment history] to support the disarmament of literally all criminals, even nonviolent misdemeanants." *Connelly* at 9 (internal quotations omitted). The court then went on to observe that simple possession of marijuana (one of the drugs Ms. Connelly was alleged to have used) would have resulted in only a misdemeanor conviction and possession of psilocybin could have possibly resulted in a felony conviction under Texas law. Nevertheless, the court points out that Ms. Connelly has not been convicted of anything related to drug use. The court observed that "the historical tradition of disarming 'unlawful' individuals appears to mainly

5

involve disarming those convicted of serious crimes after they have been afforded criminal process." *Connelly* at 11. It points out that, with regard to 922(g)(3), this process is afforded to only the small number that have been prosecuted. The rest of the millions of people who are out there using drugs as well as possessing firearms have not been afforded that process. As a result, the law "deviates from our Nation's history of firearm regulation." *Id*.

### d. Dangerous Individuals

Once again, the *Connelly* court in this section observed that the historical laws that disarmed dangerous individuals did so after legal process had been afforded to them. *Connelly* at 11-12

The *Harrison* court observes that because merely using marijuana doesn't mean that a person has a proclivity towards violence and thus disarming someone for mere drug use would not follow the history and traditions of firearm regulation. *Harrison* at 17-18.

### C. Section 922(g)(9) is not consistent with the Nation's tradition of firearm regulation, at least as far as it is applied to Mr. Springer

At the outset, Mr. Springer concedes that this Court has previously ruled that section 922(g)(9) is constitutional in *United States v. Bernard*, 2022 WL 17416681. In that ruling, this Court not only stated that "domestic violence misdemeanants are relevantly similar to felons" but it further observed that "there is an emphasis in particular on prohibiting violent people from possessing firearms." *Id*. at 8.

While Mr. Springer agrees that may be true for some offenders, he respectfully disagrees that it applies to him. The history and traditions of firearm regulation indicate that "the legislature may disarm those who have demonstrated a *proclivity* for violence or whose possession of guns otherwise threaten the public safety." *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) Barret, J., dissenting) (emphasis added). A "proclivity" requires a pattern of conduct

6

not simply a single instance of certain behavior. Someone, such as Mr. Springer, who only has been convicted of one qualifying violent crime has not sufficiently demonstrated a "proclivity" towards violence and thus should not be prohibited from possessing a firearm.

## IV. CONCLUSION

18 U.S.C.§§ 922(g)(3) and (9) are both unconstitutional pursuant to Bruen. Because of that, Counts 9 and 14 should be dismissed.

CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Pat Reinart
Assistant United States Attorney

/s/Jodi Tielebein

cc: Principal Springer

/s/Cory Goldensoph
Cory Goldensoph     AT0002826
425 Second Street SE
Suite 803
Cedar Rapids, Iowa 52401
Telephone No. (319) 364-5525
Facsimile No. (319) 286-1137
Email: cory@goldensophlaw.com

ATTORNEY FOR DEFENDANT